437 So.2d 830 (1983)
STATE of Louisiana
v.
Robert J. RODRIGUE.
No. 83-KK-0431.
Supreme Court of Louisiana.
September 2, 1983.
Dissenting Opinion September 30, 1983.
Rehearing Denied October 7, 1983.
Joseph R. Raggio, Baton Rouge, for relator.
*831 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for respondent.
LEMMON, Justice.
This matter, involving a prosecution for second degree murder, is before the court for the second time on the issue of pretrial suppression of inculpatory statements. On the first occasion, this court ordered the suppression of certain statements made without the presence of counsel, after defendant had invoked that right, and remanded the case for an evidentiary hearing as to earlier statements, which were asserted to be the product of an illegal arrest. 409 So.2d 556. After the hearing, the trial court concluded there was probable cause for defendant's arrest and denied the motion to suppress as to the statement made prior to the request for counsel. We granted certiorari to review the latest ruling. 430 So.2d 92. Upon reviewing the record, we conclude that there was a sufficient basis for the issuing magistrate's determination of probable cause to arrest defendant, and we therefore affirm the trial court's denial of the motion to suppress the statements made prior to defendant's invoking his right to counsel.
On October 24, 1979, the victim, a 51-year old woman, disappeared after dropping her children off at a football game. Although her car and purse were found later that night, her body was not found until ten days later. The cause of death was strangulation.
On November 15, 1979, Mr. and Mrs. Glenn Hutchinson learned of the murder after returning from vacation. They notified the police that they had seen, on the night of the murder in the area where the victim's blue Chevrolet was found, an unusual incident involving a man in an 18-wheel truck and a woman in a blue car. During the investigation, the Hutchinsons positively identified the victim's car and tentatively identified defendant's truck as the ones involved in the incident.
Based on this information and other information possibly linking defendant to two recent kidnappings and rapes involving the use of an 18-wheel truck, the police on November 17, 1979 obtained a warrant to arrest defendant. After the arrest at 5:05 p.m. and before the police vehicle arrived at the station at 5:25 p.m., defendant made the oral statement which is the subject of the present inquiry.[1] The admissibility of the statement turns on whether the police had probable cause to arrest defendant.
At the evidentiary hearing on probable cause, five police officers outlined the following information, which was developed in the investigation following the murder and was ultimately presented to the judge who issued the arrest warrant. On the evening of the murder, Mr. and Mrs. Hutchinson were preparing to leave on a trip and went to H & H Marine on Little Bayou Black to attend to some last minute details. When they arrived, they saw a lady in a fairly new blue Chevrolet in the driveway. The trailerless cab of an 18-wheel truck was parked nearby on the shoulder of the road. Mr. Hutchinson approached the lady, who explained that the truck driver had signaled her over and advised that her car was on fire. She stated that she had started to park the car, but had decided to try to make it home, with the truck driver following her in case there was more trouble. The truck driver got out of the vehicle and walked toward them, but turned around and reentered the cab without talking to the Hutchinsons. The lady then drove off toward the St. Charles Extension, followed by the man in the truck, which the Hutchinsons described as brown and yellow with "lots of chrome".
The Hutchinsons spent about four minutes at the office and then proceeded on the St. Charles Extension, where they saw the lady's blue Chevrolet on the side of the road. Not seeing the truck, they assumed *832 that further car trouble had developed and that the truck driver had taken the lady home.
Upon returning from the trip, the Hutchinsons learned of the murder and the discovery of the victim's car on the St. Charles Extension. The police interviewed the Hutchinsons on November 16 and determined that the witnesses' description of the lady and the car they had seen at H & H matched the victim and her car, which the police found at the exact spot on St. Charles Extension described by the Hutchinsons.
Armed with the description of the apparent murderer and of the vehicle used to kidnap the victim, the officers returned to headquarters and discussed the matter with other officers. One officer recalled a similar incident on Coteau Road in September, 1979, in which a man in an 18-wheeler cab signaled a woman over to the side of the road and told her that her car was on fire before kidnapping and raping her. The victim's description of the truck driver in that case (five feet, seven inches tall and stockily built) matched the Hutchinsons' description of the truck driver in the present case (five feet, eight or nine inches tall, stocky build, mustache and thick black or brown hair). However, the truck used in that case was described as blue.
Another officer remembered investigating a reported rape in the cab of an 18-wheel truck in the parking lot of Gaylord's shopping center in April, 1979. The officers checked the records of the Gaylord's incident and determined that defendant was the alleged rapist and that his physical characteristics matched the description of the truck drivers in the Coteau Road rape and the present murder.[2]
The officers prepared a photographic lineup, consisting of pictures of defendant and five other persons. However, while the Hutchinsons found defendant's photograph to be "similar", neither could positively identify defendant as the truck driver seen on the night of the murder.
The officers made inquiries of persons in the trucking business and learned that defendant in fact owned a brown and yellow truck, which he kept next door to his home on Marietta Street in Gray. One of the officers then took the Hutchinsons to defendant's home to view his brown and yellow truck. Upon observing the truck, the Hutchinsons stated that "it looked like the truck", but that they "couldn't tell one hundred percent because the cab was down".
Significantly, the officer who had conducted the photographic lineup and had taken the Hutchinsons to view the truck stated on cross-examination that he had been in the trucking business for four years and had never seen another truck in the area with that color scheme.[3]
The officers obtained a warrant on the basis of this information and arrested defendant.
Probable cause for an arrest exists when the facts and circumstances, of which the police have reasonably reliable information, justify the belief that the person to be arrested has committed a crime. The magistrate may issue an arrest warrant based on the facts and circumstances asserted in the affidavit, as well as those asserted verbally by the officer at the time the warrant is obtained. State v. Haynie, 395 So.2d 669 (La.1981).
The process of determining probable cause for the issuance of search and arrest warrants does not involve certainties *833 or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances. See Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system. Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).
Furthermore, this case involves the review of a magistrate's determination of probable cause prior to issuing the warrant. Such a determination is entitled to significant deference by reviewing courts.[4]Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). As the Supreme Court stated in Gates, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." ___ U.S. at ___, 103 S.Ct. at 2331. Additionally, because of "the preference to be accorded to warrants", marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).
In the present case, the police officers knew that a vicious murder had been committed in November, 1979, after a female motorist had been signaled off the road by a truck driver and told that her car was on fire; that defendant's physical description matched that of the truck driver, who was the last person seen with the victim just before her disappearance and was the probable murderer; that defendant's 18-wheel truck cab exactly matched the description of the vehicle observed in the incident just before the victim's disappearance and was possibly the only truck in Terrebonne Parish with that unusual color scheme; that defendant had been the subject of a reported kidnapping and rape in the cab of a similar type vehicle in April, 1979, and had admitted having intercourse with the woman who reported the incident; and that a person matching defendant's physical description had signaled a woman motorist off the road, under the pretext that her automobile was on fire, before kidnapping and raping her in September, 1979.[5]
While this information was insufficient to establish every element of the crime of *834 second degree murder beyond a reasonable doubt, the totality of the circumstances presented to the judge issuing the warrant established the probability of defendant's involvement in known criminal activity and provided a substantial basis for the judge to reach a practical and commonsense decision that there was a fair probability that defendant had committed the crime. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
For these reasons, the judgment of the district court denying the motion to suppress the pertinent statement is affirmed.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent.
Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Johnson, 422 So.2d 1125 (La.1982); State v. Hathaway, 411 So.2d 1074 (La.1982). While there need not be sufficient proof to convict, mere suspicion is not enough. State v. Johnson, supra; State v. Thomas, 349 So.2d 270 (La.1977).
The information available to the police officers at the time they obtained the warrant consisted of the following: 1) Witnesses spoke to the victim on the night of the murder and learned that a male truck driver, about five feet, eight or nine inches tall, stocky build, mustache and thick black or brown hair had caused the victim to pull her car off to the side of the road when he told her that the car was on fire. 2) The witnesses stated that the truck driver was driving a brown and yellow truck with a lot of chrome; 3) The defendant in the instant case became a suspect in an incident in which the driver of a blue truck signalled a woman over to the side of the road and told her that her car was on fire before kidnapping and raping her; 4) The defendant was a suspect in an alleged rape for which he was never booked; 5) The witnesses who had seen the victim and a man fitting the defendant's description together on the night of the murder were unable to identify positively the defendant from a photographic display; 6) The witnesses were taken by the defendant's house to view his truck. They merely stated that it looked like the truck they had seen on the night of the murder but they could not be 100 percent sure. Additionally, one of the detectives, who had worked previously as a truck dispatcher, observed that he had never seen another truck in the area with that color scheme. The majority opinion attaches significance to this factor. Their reliance on this point, however, is misguided because it assumes that the detective observed or had knowledge of the color scheme of every tractor trailer which might have passed through the area. At the same time the majority finds this factor significant they give little or no weight to the observations of another officer who, without a background in trucking, speculated that there were a number of such trucks in the area fitting the description provided by the witnesses.
Based upon these facts and circumstances I do not feel that there was sufficient information available to justify the issuance of an arrest warrant. Thus, I would require suppression of the statements made minutes after the illegal arrest.
In addition, I feel that footnote five is unnecessary and that the suggested proposition, i.e., that knowledge should be imputed among members of the same investigating team, does not follow as a general rule from the authorities cited. In United States v. Ragsdale, 470 F.2d 24 (5th Cir.1972), two officers had stopped the defendant's car for speeding. One of the officers observed a pistol on the floorboard. This same officer walked away with the defendant in order to question him and write a ticket. The officer who had not observed the gun in plain view and who was apparently unaware of the other officer's knowledge searched the *835 passenger compartment of the vehicle where he discovered several guns. Judge Clark, writing for the majority, felt that in the circumstances of that case it would be "hypertechnical" to bifurcate the knowledge of the two officers. The situation in that case is obviously distinguishable from the facts in the present case which did not involve the officers at the scene of the arrest. The Ragsdale decision is simply too narrow to be cited as support for the argument suggested by the majority.
Likewise, I find unhelpful the reference to footnote 7 of State v. Smith, 392 So.2d 454 (La.1980). This footnote states:
In a case, such as presented here, in which police officers are working in a large urban police department, a request (or "wanted") by one police officer alerting others that he has probable cause to arrest a suspect can be acted upon by other police officers. The test of the validity of the arrest, for purposes of the exclusionary rule, ultimately rests upon whether the investigating officers had sufficient facts to support probable cause. See United States v. Ragsdale, 470 F.2d 24 (5th Cir.1972).
I fail to see how this supports the argument in footnote five of the instant case since there was no communication between the arresting officers and the officers in Mississippi until after the arrest.
DENNIS, Justice, dissenting.
I respectfully dissent from the majority's opinion as I am convinced that the arrest of defendant was made without probable cause.
Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Arceneaux, 425 So.2d 740 (La.1983); State v. Johnson, 422 So.2d 1125 (La.1982).
The arresting officer, Detective Elstner, acted not upon a reasonable belief based upon knowledge of facts and circumstances but upon a mere suspicion, albeit a strong one. While the Hutchinsons positively identified the victim's car, they could only tentatively identify the defendant's truck as the one involved in the incident, could not identify the defendant in a photographic line-up, and could describe the defendant only in very general terms. Furthermore, the other information possibly linking defendant with earlier crimes involving rapes and the use of an 18-wheel truck, which the sheriffs uncovered following their interview with the Hutchinsons, did not elevate the sheriffs' suspicions to the level of probable cause.
There is some suggestion in the majority's opinion that the arresting officer can be said to have had probable cause to make the arrest because members of an "investigating team," who were somewhere in Mississippi at the time of the arrest in Terrebonne Parish, had probable cause to make the arrest. While there is authority for a "collective information" theory of probable cause, United States v. Ragsdale, 470 F.2d 24 (5th Cir.1972), the jurisprudence does not support its application in situations, such as the one we review today, where the officer who possessed sufficient knowledge to make an arrest was neither in close time-space proximity to the questioned arrest or search nor communicating with the arresting officer. See United States v. Bernard, 623 F.2d 551 (9th Cir.1980); United States v. Butler, 611 F.2d 1066 (5th Cir.1980); State v. Crowder, 1 Hawaii App. 60, 613 P.2d 909 (1980); Tillman v. State, 271 Ark. 552, 609 S.W.2d 340 (1980); Commonwealth v. Gambit, 274 Pa.Super. 571, 418 A.2d 554 (1980); LaFave, Search and SeizureA Treatise on the Fourth Amendment § 3.5(c) (1978).
NOTES
[1] The later statement, made at the police station, has already been suppressed, as noted earlier.
[2] The officer had investigated a radio report of a rape and found defendant asleep in the truck, which contained a woman's slip. Defendant admitted intercourse, but contended it was consensual after he had picked up the woman in a bar and taken her for a ride in his 18-wheel unit. The woman eventually decided not to press the matter, because it was her word against his. Defendant was never arrested or booked.
[3] Defense counsel also questioned two other officers as to the number of brown and yellow trucks in Terrebonne Parish. One speculated that there were "a bunch of them", but was not questioned about the basis of this statement. The other disclaimed any knowledge on the subject.
[4] The fact that the relevant information was conveyed orally to the issuing judge by the officers, rather than being included in the affidavit, is not significant. State v. Haynie, above.
[5] The victim of the September, 1979, rape on the Coteau Road was contacted in Mississippi by Terrebonne Parish detectives on the day of defendant's arrest. She identified defendant as the rapist from a photographic array between 5:00 and 5:15 p.m. Although the information on the identification was not relayed to the Terrebonne Parish Sheriff's office until 5:45 p.m., after defendant's arrest at 5:05 p.m., the identification may have occurred before the statement was actually made in the police car, which arrived at the police station at 5:25 p.m.

Because we find probable cause was established without the inclusion of this additional information (the positive identification of defendant as the Coteau Road rapist), we need not assess its significance. However, it is arguable that facts known to officers who are engaged in a common enterprise of investigating a known offense should be imputed to all members of the "investigating team". See United States v. Ragsdale, 470 F.2d 24 (5th Cir.1972). See also State v. Smith, 392 So.2d 454 (La. 1980), note 7. It is also arguable that the deterrent purposes of the exclusionary rule are not served by excluding a voluntary statement given after an arrest based on a warrant, when the information developed by the officers at the time they obtained the warrant was slightly deficient of probable cause and when additional information sufficient to establish probable cause would ultimately have been discovered by the officers, not as a result of the arrest itself, but as an inevitable discovery resulting from the ongoing investigation which was in progress at the time of the arrest.
On the other hand, the fact that a better showing of probable cause could have been made, if the officers seeking the warrant had waited for the development of available information, does not detract from the showing of probable cause that was made.