12JONES, Judge.
On January 29, 1998, the defendants James Snee and Gerald Daughterty were charged with one count each of the possession with the intent to distribute alprazo-lam, the possession with the intent to distribute diazepam, the possession with the intent to distribute testosterone, and the possession with the intent to distribute codeine. In addition, Snee was charged with one count of attempted manslaughter, and Daughterty was charged with one count each of the possession with the intent to distribute dextropropoxyphene, the possession with the intent to distribute dehydroepiandosterone, and the possession with the intent to distribute marijuana. The defendants have pled not guilty to all charges. Their motions to suppress the evidence were heard on August 28, 1998 and granted on December 4th. The State now comes before this court with a timely application seeking relief from this ruling. There is no indication of a trial date.

FACTS

The following facts were gleaned from a Texas police report, the affidavits for various search warrants issued in this case, and the testimony of two officers at the suppression hearing. On November 24, 1997, Sgt. Roger D. Hermes, a Texas Lpolice officer assigned to the air cargo terminal in San Antonio noticed a package mailed from Laredo, TX, bearing no return addréss and addressed to The Herb Import, Attn. Jim Schenck, 711 St. Peter Street, New Orleans. Because the package was similar to others found to contain drugs, the officer removed the package from the cargo line. The Texas police report indicates that a narcotics detection dog “alerted” on the package. The officer *272 gave the package to a U.P.S. employee, who opened the package and found nine bundles containing various amounts of vali-um, xanax, and steroids inside. The officer then contacted the Louisiana State Police concerning the package.
The Texas officer resealed the package and sent it to The Louisiana State Police. The troopers opened the package to verify its contents, and then they resealed the box, and obtained an anticipatory warrant to search 711 St. Peter after the troopers made a controlled delivery of the package.
An officer, disguised as a U.P.S. deliveryman, delivered the package to 711 St. Peter. The defendant Gerald Daughterty signed for the package. Soon thereafter, the defendant James Snee arrived at the store, entered, and then soon left, carrying the package to his car. When a trooper attempted to stop Snee, Snee abruptly accelerated his car and hit the trooper, dragging him forty feet. Other troopers apprehended and arrested Snee.
The troopers then executed the warrant at 711 St. Peter and seized 1,600 dosage units of yohimbine hydrochloxide and a marijuana-growing magazine. The troopers arrested Daughterty. Although Daughterty insisted he did not have his car with him that day, other troopers had observed his car parked nearby, and an automobile key was found in his pocket. Troopers also observed a woman who identified herself as Daughterty’s wife unlock the car and try to drive it from the|4scene. The troopers stopped her from doing so, and they obtained a warrant to search the car. However, no evidence was seized from the car. The officers learned that Daughterty had a prior federal conviction for two counts of distribution of cocaine. Daughterty told the troopers he lived in Covington, and the troopers obtained a warrant to search his house. Nothing was seized from this residence. The troopers, however, also learned that Daughterty had a residence at 225 N. Roadway in New Orleans. The troopers obtained a warrant to search this residence, and pursuant to this warrant they seized a black and white bag containing marijuana, seven vials of testosterone, one vial of nubdin, sixty dosage units of codenit, approximately 500 dosage units of assorted tablets, one handgun, and several notebooks.
The troopers also obtained a warrant to search Snee’s apartment, and seized a notebook from Snee’s apartment.
At his arrest, the troopers advised Snee of his rights, and initially he refused to make a statement. However, after being transported to the Customs House, he was again advised of his rights, and at that point he gave a statement.

DISCUSSION

The evidence in this case was mostly seized pursuant to search warrants. In State v. Page, 95-2401, p. 12 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709-710[1] this Court noted the standard for determining probable cause to support the issuance of a search warrant:
Louisiana Code of Criminal Procedure Article 162 provides that a search warrant may be issued “only upon | .^probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant.” In State v. Duncan, 420 So.2d 1105, 1108 (La.1982) our Supreme Court held that probable cause exists when:
The facts and circumstances within the affiant’s knowledge, and those, of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched, (citations omitted) See also, State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ den. 531 So.2d 764 (La.1988).
*273 The facts which form the basis for probable cause to issue a search warrant must be contained “within the four corners” of the affidavit. Duncan, supra at 1108. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The reviewing Court must determine whether the “totality of circumstances” set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him that there is a reasonable probability that contraband will be found. The duty of the reviewing court is simply to ensure that the magistrate had a “substantial basis” for concluding that probable cause existed. Manso, supra at 482.
See also State v. Bradford, 98-1428 (La.App. 4 Cir. 12/9/98), 729 So.2d 1049. In Page, officers stopped a suspect at the airport and retrieved from him a piece of stationery from a local motel where the suspect had stayed the night before. On this paper was a telephone number. The officers set up a surveillance of three rooms in the motel and observed the defendant enter one of the rooms without knocking. The defendant then went from that room to another of the targeted rooms and entered it. He exited a short time later carrying a plastic bag and went back to the original room. He stayed a short while and then reemerged, carrying a | ^larger sack, which the officers could see, contained smaller bags. The defendant entered a ear and left the scene. The officers followed and tried to stop the defendant’s car, but the defendant fled. The officers pursued, and the defendant eventually crashed into another car. The officers apprehended the defendant as he tried to flee on foot, and when they took him back to his car, they noticed small packages of marijuana scattered inside and around the car. The officers arrested the defendant, and pursuant to a search incident to this arrest they seized the key to the motel room and a beeper, the number for which matched that written on the piece of paper seized from the suspect at the airport. Based upon these facts, the officers got warrants to search both motel rooms. On appeal, this Court found the affidavits, which set forth these facts, supplied probable cause for the issuance of the warrant.
Likewise, in State v. Andrews, 97-2321 (La.App. 4 Cir. 11/13/97), 703 So.2d 137, the officers had received both a tip from an informant for the National Crime Bureau as well as a local tip concerning a “chop shop” being run at a certain address. Both tips mentioned the reselling of auto parts from stolen vehicles and the altering of VIN tags. The officers went to the indicated address and saw several stripped vehicles sitting in the yard of the address. This Court found these facts supplied probable cause for the issuance of the warrant to search the address.
Here, the first warrant the troopers obtained was for 711 St. Peter, the address listed on the package. The affidavit shows that the Texas officer noticed the package because it was similar to other packages which had been discovered to contain contraband in that it had been mailed from a “vault” in Laredo and had no return address. The officer opened the package and discovered drugs inside. The officer then contacted the Louisiana State Police and sent the package to the police |7for a controlled delivery. Based upon these factors, the troopers obtained a warrant to search 711 St. Peter conditioned upon the delivery of the package.
The Texas police report, which is included in the State’s application, indicates the officer noticed the package and removed it from the cargo line, and then a narcotics detection dog “alerted” on the package. At that- point, the officer gave the package to a U.P.S. employee, who *274 opened the package. The use of a canine to detect contraband is not a “seizure” for Fourth Amendment purposes. See State v. Addison, 94-2431 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224; State v. Bruser, 95-0907 (La.App. 4 Cir. 9/15/95), 661 So.2d 152. Once the dog “alerted” on the package, there was probable cause to believe it contained contraband. However, the evidence of the dog’s detection of the contraband was not placed in the first affidavit; indeed, this information is discovered only-after reading the Texas police report. The question as to whether a dog “alerted” on the package renders the state’s burden in this case more difficult and it is unclear whether the State showed a basis to believe the package contained contraband prior to the Texas officer opening it in Texas.
The trial judge, in his reasons for judgement, stated:
“... I think — the Court’s reading of the law, it is pretty clear, Based upon the law and the evidence that the Court heard, and the photographs that the Court saw of the package, that started this whole process, which according to testimony of the officers was suspiciously packaged and gave rise to the original opening of the package, which then started, as I say a process in motion, the whole process. The Court believes that in fact there was no probable cause, it was not a situation where a dog alerts on the package. The Court’s way of viewing photographs and from the testimony the Court heard, this package was no different from any other package, this today being June 4th — I mean December 4th, the Court was curious and went to the Post Office or Fed-X,right now, just right now just how many suspicious packages this Texas agent would see being the month of Christmas. |RThe Court just doesn’t believe the State has the evidence to show probable cause. The Court is going to grant the Motion to Suppress, not just based on the seizure, or the search of the original package, but under the fruit of the poisonous tree doctrine, any subsequent searches which resulted in the evidence which formed the basis of this charge, the Court believes that the evidence which formed the basis of this charge, the Court believes that the evidence is not there to substantiate the State Police’s actions in this case ...”
Thus, the trial Judge found that a full fabrication by the Texas officer formed the basis for the issuance of all the search warrants herein and suppressed all the evidence there from. We find no error in the ruling of the trial court.
Having found that the affidavit showed no basis for the opening of the package in Texas, the next question is whether seizure of the evidence from 711 St. Peter need not be suppressed because the “good faith” doctrine applies to this case. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In State v. Scull, 93-2360 pp. 9-10 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245[2], this court discussed “good faith”:
In Leon, the Court noted that evidence seized pursuant to a warrant for which there was no probable cause to support it need not be suppressed if the officers who executed the warrant believed the warrant was validly issued. The Court listed four instances, however, where suppression remains the appropriate remedy for a search pursuant to an invalid warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or which he would have known were false except for his reckless disregard of the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affidavit was “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable”; or (4) the warrant was so facially deficient that it could not *275 be presumed to be valid. Id. at 923, 104 S.Ct. at 3421.
This Court found that although the officers may have thought .that the affidavit 19contained probable cause to support the warrant, some of the information contained in the affidavit was learned as the result of' an illegal arrest. This Court noted: “The purpose of the exclusionary rule is to deter unlawful conduct. Without this factor, there would have not been probable cause for the issuance of the warrant. To allow its use, or to uphold a search based upon its use, would appear to defeat the purpose of the exclusionary rule.” Id. at p. 10, 639 So.2d at 1245. This Court then refused to apply the good faith exception to that case.
By contrast, in State v. Varnado, 95-3127 (La.5/31/96), 675 So.2d 268, the Court applied the good faith exception to a case where the affidavit for a search of a certain residence was found to be lacking in probable cause. Although the officers had probable cause to make a warrantless arrest of the defendant, they obtained an arrest warrant prior to arresting him. They then obtained the consent of the defendant’s father to search the residence, but again they obtained a search warrant. However, the affidavit for the residence failed to provide any connection between the defendant and the residence. The officers then executed the warrant. On review, the Court found that although the affidavit failed to make the necessary connection between the defendant and the residence, the evidence seized from the house should not have been suppressed because the officers in “good faith” relied upon the warrant. The Court stated:
Nevertheless, the exclusionary rule “is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Leon, 468 U.S. at 916, 104 S.Ct. at 3417. Its application therefore “must be carefully limited to the circumstances in which it will pay its way by deterring official [ ] lawlessness.” Id., 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 ... Accordingly, “suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.” Id., 468 U.S. at 922 n. 23, 104 S.Ct. at 1 3420.
The reasonableness inquiry under Leon is an objective one, which turns on the totality of the circumstances surrounding the issuance of the warrant. Id., 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. Those circumstances include the overall familiarity of the officer applying for the warrant with the investigation and the degree to which he has participated in the events leading to the search. Massachusetts v. Sheppard, 468 U.S. [981] at 989 n. 6, 104 S.Ct. [3424] at 3428 n. 6[, 82 L.Ed.2d 737] [1984].
State v. Varnado, at pp. 3-4, 675 So.2d at 270. The Court then held that because the officers in that case had cautiously (and unnecessarily) sought warrants for the defendant’s arrest and for the search of his home, the “good faith” exception to the warrant requirement would apply to that case.
Here, a factor listed in Leon for suppression is present in this case. There is no indication the affiant attempted to mislead the magistrate, nor that the magistrate abandoned his neutral role. Nor is the affidavit itself “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable”, nor is it facially defective. However, the affi-ant solely relies upon the Texas report, which the trial court implies is a complete falsity. To reward the state for relying upon the misconduct of a fellow police officer of another state clearly defeats the intent of the exclusionary rule. Without the recitation of facts concerning the Texas officer’s actions there would be no reasonable basis to lead the trooper to believe the Texas officer had probable cause to believe the package contained contraband. Thus, the “good faith” exception does not apply to this case, and all of the evidence *276 seized from the defendants resulting from execution of the search warrants must be suppressed.

DECREE

For the reasons above indicated, the Relator’s writ application is granted; Inhowever, finding no error by the trial court, relief is denied.

WRIT GRANTED; RELIEF DENIED.

LANDRIEU, J., DISSENTS

. Writ den. 96-2352 (La.2/2/97), 688 So.2d 522.

. Writ den. 94-2058 (La. 11/11/94), 644 So.2d 391.