ROSEMARY LEDET, Judge.'
| ¶ This application for supervisory writ is before the court on remand from the Louisiana Supreme Court. The sole issue is whether the district court correctly denied a motion to suppress evidence seized pursuant to a search warrant for a residence.

STATEMENT OF THE CASE

In August 2010, the Relator, John Cunningham, and three codefendants (Arthur Grandpre; Phillip Dominick, III; and Gerald Williams, Jr.) were indicted on one count each of first degree murder and conspiracy to commit first degree murder. They all plead not guilty to the charges.
In March 2011, the district court heard various suppression motions and took the matters under advisement. In April 2011, the district court denied the defense motion to suppress evidence seized from Mr. Williams’ house pursuant to a search warrant. From that decision, Mr. Cunningham filed a writ application with this court. Noting that the Relator would have an adequate remedy on appeal if ultimately convicted, this court denied his writ. State v. Cunningham, 11-0886 (La.App. 4 Cir. 8/4/11) (unpub.). The Louisiana Supreme Court granted Mr. Cunningham’s writ and remanded to this court “for briefing and argument to ^address the defendant’s motion to suppress.” State v. Cunningham, 11-1924 (La.1/13/12), 77 So.3d 954. On remand, we entertained additional oral and written argument from both sides. For the reasons that follow, we find no error in the district court’s denial of the motion to suppress and deny Mr. Cunningham’s writ.

STATEMENT OF THE FACTS

The charges in this case stem from a shooting that occurred in February 2010 in the 2300 block of D’Abadie Street in New Orleans. One victim was killed, David Neiswonger; and another victim was wounded, Glen Holly. The lead investigator of the shootings, Detective Orlando Matthews, testified at the March 2011 mo *1199 tions hearing that he developed Mr. Grandpre as the suspected gunman in the shootings. Detective Matthews showed a lineup containing Mr. Grandpre’s photograph to a female witness, who was not an eyewitness to the shooting. She identified Mr. Grandpre as the shooter and noted that he dated her sister. Detective Matthews also showed the lineup to the surviving victim, Mr. Holly. Mr. Holly, however, was unable to make any identification. Using a more recent photograph of Mr. Grandpre, Detective Matthews compiled a second lineup. From the second lineup, Mr. Holly identified Mr. Grandpre as the man who shot him and the deceased.
Further information led Detective Matthews to suspect that Mr. Williams was the person who drove Mr. Grandpre to the scene of the shooting. According to Detective Matthews, Mr. Holly told him that earlier on the morning of the shooting he saw a red Mustang pass by the residence. When Detective Matthews showed Mr. Holly a lineup containing Mr. Williams’ photograph, Mr. Holly identified Mr. Williams as the man whom he saw driving the Mustang that morning several hours before the shooting. Mr. Holly indicated that he often saw this Mustang in the ^neighborhood parked near the residence where the shooting occurred. Mr. Holly also indicated that the man who shot him and the deceased was a passenger in the Mustang when it passed by the residence earlier that morning. Detective Matthews admitted that another man and woman were also present in the residence when the shooting occurred, but they were in another room. Because they both were so impaired by substance use at the time of the shooting that they would have been unable to make any identification, Detec-five Matthews did not show either of them a lineup.
Based upon a jailhouse tip, Detective Matthews subsequently interviewed Mr. Dominick at police headquarters. After being advised of his Miranda rights and waiving those rights, Mr. Dominick gave a statement admitting that he spoke over the telephone with Mr. Cunningham (the Relator), who at that time was incarcerated in connection with an unrelated murder. In his statement, Mr. Dominick told the detective that during his telephone conversation with Mr. Cunningham, Mr. Cunningham told him that Mr. Holly must have been “talking.” Detective Matthews stated that Mr. Cunningham “basically” put a “hit” out on Mr. Holly. Detective Matthews testified that the verbiage used by Mr. Dominick and Mr. Cunningham during the call, which was recorded as a matter of routine by the sheriffs office, paralleled that used in the movie State Property. Detective Matthews testified that Mr. Dominick admitted Mr. Williams later called him and told him that he and Mr. Grandpre had “taken care of the matter.”
After obtaining Mr. Dominick’s statement, Detective Matthews obtained search warrants for the red Mustang, which belonged to Mr. Williams’ mother, and for 4147 Bayouview Court, the residence where Mr. Williams and his mother lived. Evidence was seized from both the vehicle and the residence.
|4In the affidavit for the warrant to search the vehicle, the red Mustang, Detective Matthews attested to the following: [1]
• He began investigating the shootings at 2327 D’Abadie in February 2010.
*1200 • His investigation revealed the shootings were part of an attempt to kill a witness to a separate homicide.
• He learned that the Mustang took the shooter to the crime scene and may-have helped the shooter leave from the scene.
• The surviving victim said that the gunman should have had blood on his clothing due to a struggle that occurred during the shooting.
• He learned that the driver of the Mustang was “Gerald,” and the registered owner of the Mustang that was the subject of the search warrant had a son named “Gerald.”
• The owner’s son was connected to jailhouse recordings with a suspect in jail for the earlier homicide.
• The Mustang may contain evidence to connect “Gerald” to the homicide and others already arrested.
Based upon this affidavit, Detective Matthews obtained a warrant to search the red Mustang on June 16, 2010.
On the following day, Detective Matthews submitted an almost identically worded affidavit to the same magistrate to obtain a warrant to search 5147 Bayouview Court, Mr. Williams’ residence. The affidavit included the misstatement that Detective Matthews learned that “the above listed vehicle” (apparently referring to the red Mustang registered to Mr. Williams’ mother) was used to transport the shooter to the scene and possibly to transport him from the scene after the shooting. The only difference between the two affidavits concerned language at the end of the affidavit for the residence stating: “Gerald has been |sheard on jail records indicating his part in the murder and he indicated the part the shooter played in the murder.” Pursuant to this affidavit, Detective Matthews obtained a warrant to search 5147 Bayouview Court, Mr. Williams’ residence.
On the same date that Detective Matthews sought and obtained the search warrant for Mr. Williams’ residence, he also obtained a warrant for Mr. Williams’ arrest. The arrest warrant was obtained before the search warrant for the residence. In the affidavit for the arrest warrant, Detective Matthews recounted that he investigated the shooting and that he learned from several arrested subjects that the shooting was an attempt to kill a witness to a separate homicide. The affidavit further stated that Detective Matthews also learned that the vehicle that took the shooter to the residence, and also may have driven him away after the shooting, was a red Mustang and that the driver of the Mustang was a subject known as “Gerald.” The affidavit still further stated that subsequent investigation revealed that the owner of the suspected Mustang has a son named Gerald, who resided at 5147 Bayouview Court. Detective Matthews ran a search and learned that Gerald Williams had previously been arrested with Mr. Cunningham, who was in jail at that time for the earlier murder. The affidavit noted that Mr. Williams had admitted his involvement in the present murder and attempted murder at 2327 D’Aba-die Street, providing details including that he waited outside while the shooter went inside to murder the deceased.

DISCUSSION

In the present writ, the Relator contends that the district court erred in denying the motion to suppress the evidence seized from the residence.[2] Al *1201 though Isthe evidence that the Relator seeks to suppress was seized from Mr. Williams’ residence, not his own residence, the Relator nonetheless has standing to challenge the admissibility of this evidence. Standing to contest an illegal search is conveyed by Article 1, § 5 of the Louisiana Constitution to any person who is “adversely affected” by the search or seizure. State v. Lewis, 08-0172, p. 3 (La.App. 4 Cir. 6/25/08), 988 So.2d 789, 790-91 (citing State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396). Among the items seized from Mr. Williams’ residence were an Orleans Parish Sheriffs Office visitor card in Mr. Williams’ name, allowing him to visit the Relator in jail, and a video of the movie State Property. Because the visitor card positively links Mr. Williams to the Relator, the Relator has standing to contest the admissibility of the items seized from Mr. Williams’ residence.
Probable cause for the issuance of a search warrant is shown “when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” State v. Johnson, 408 So.2d 1280, 1283 (La.1982); see also State v. Green, 02-1022, pp. 6-7 (La.12/4/02), 831 So.2d 962, 968; State v. Fournette, 08-0254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199. “Additionally, a search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized.” State v. Casey, 99-0023, p. 4 (La.1/26/00), 775 So.2d 1022, 1028 (citing State v. Weinberg, 364 So.2d 964, 968 (La.1978)). The affidavit also must set forth sufficient information to enable a magistrate “to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system.” State v. Rodrigue, 437 So.2d 830, 833 (La.1983); Foumette, | -¿supra. At that stage the magistrate must determine if the affidavit sets forth sufficient facts, within the “four corners” of the warrant, to conclude “that there is a fair probability that evidence of a crime or contraband will be found in the place described in the warrant.” Fournette, 08-0254 at p. 25, 989 So.2d at 215.
A reviewing court’s task is to insure that under the totality of the circumstances the issuing magistrate has a “substantial basis” for finding that probable cause existed. Green, 02-1022 at p. 8, 831 So.2d at 969 (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). “The process of determining probable cause for the issuance of search and arrest warrants does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances.” Rodrigue, 437 So.2d at 832-33 (citing Gates, supra).
Furthermore, “if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation.” Green, 02-1022 at p. 8, 831 So.2d at 969. “Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers.” Id. Accordingly, “[t]he magistrate’s determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magis *1202 trate’s assessment to be reasonable.” Rodrigue, 437 So.2d at 833.
 The defendant bears the burden of proof to show that evidence seized pursuant to a search warrant should be suppressed. State v. Williams, 03-0302, p. 5 8(La.App. 4 Cir. 10/6/03), 859 So.2d 751, 754; La.C.Cr.P. art. 703 D. The defendant in this case (the Relator) argues that the affidavit for the warrant to search the residence does not set forth probable cause to believe that evidence of the murder would be found there. He further argues that the good faith doctrine enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984),[3] does not apply in this case because the affidavit was so lacking in evidence to support a finding of probable cause that Detective Matthews could not have reasonably relied upon the validity of the warrant in good faith. He notes that the affidavit for the residence, which apparently was copied almost word-for-word from the affidavit for the search warrant for the vehicle, does not set forth a basis for the magistrate to find that there was probable cause for the issuance of the warrant. The Relator’s argument on this point is persuasive.
The affidavit for the residence does not contain any information that ties the residence to the murder or even to anyone arrested for the murder. The affidavit mistakenly includes the allegation that “the above listed vehicle,” meaning the Mustang, took the shooter to the scene of the crime. The affidavit states that the Mustang was registered to a woman who had a son named “Gerald” and that “Gerald” was connected to recordings of phone calls from jail concerning the murder of the deceased in this case. However, the affidavit contains no allegation that “Gerald” lived at the Bayouview residence or that the Mustang was registered to a woman who lived at that address. Thus, the affidavit by itself fails to set forth probable cause for the magistrate to believe that there was evidence of the murder at the residence.
19Nonetheless, evidence seized pursuant to a warrant that is ultimately found not to contain probable cause for its issuance need not be suppressed “if the officers who executed the warrant believed it to be validly issued.” State v. Long, 03-2592, p. 6 (La.9/9/04), 884 So.2d 1176, 1180 (citing Leon, supra). The Court in Leon based its ruling on the purpose of the exclusionary rule — to deter police misconduct — and found that suppression is not necessary unless some sort of police misconduct was implicated. The Court in Leon, however, set forth four instances in which the good faith doctrine would not apply: (1) where the affiant misled the magistrate by including misleading statements in the affidavit that the affiant knew were false or that he should have known were false in the , absence of a reckless disregard for the truth; (2) where the magistrate abandoned his detached and neutral role; (3) where the affidavit was “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;” or (4) where the warrant was so facially deficient that the officers could not presume it to be valid. Leon, 468 U.S. at 923, 104 S.Ct. at 3421.
This court has declined to apply the Leon good faith doctrine when information contained in an affidavit for a warrant was gleaned through an illegal arrest and when an affidavit contained unreliable informa *1203 tion from an out-of-state officer. See State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239; State v. Snee, 99-0257 (La.App. 4 Cir. 9/1/99), 743 So.2d 270. In Snee, this court noted that upholding the seizure of evidence in these situations would reward officers for reliance on misconduct by other officers.
1 inIn Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), the United States Supreme Court reiterated its holding in Leon, supra, that the exclusion of evidence is mandated only when there has been some sort of police misconduct. In Herring, soon after notifying the arresting officers about the warrant, officers in the other department learned that the warrant had been recalled but the recall had not been placed in the computer. The officers immediately contacted the arresting officers, but the arresting officers had already searched the defendant and found contraband. The Supreme Court upheld the lower courts’ rulings that refused to suppress the evidence, noting that the question of the exclusion of the evidence “turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct.” Herring, 555 U.S. at 137,129 S.Ct. at 698.
Reiterating that the express purpose of the exclusionary rule is to deter police misconduct, the Supreme Court in Herring found that there was no improper conduct that led to the defendant’s arrest. The Court noted that although the district court found the error on the part of the other police department was negligent, it was neither reckless nor deliberate. The Court further noted that the error did not require “the extreme sanction of exclusion,” because there was no police misconduct that suppression of the evidence would deter. Herring, 555 U.S at 140, 129 S.Ct. at 700, The Court explained that the exclusionary rule is triggered when “police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Herring, 555 U.S at 144, 129 S.Ct. at 702.
Similarly, in State v. Santamarina, 10-0028 (La.App. 4 Cir. 11/10/10), 51 So.3d 822, this court affirmed the trial court’s denial of a motion to suppress evidence seized pursuant to a warrant. Among other arguments, the defendant |ncontended that the affidavit for the warrant failed to mention that before obtaining the warrant, the officers had arrested the defendant and found no drugs on his person. He argued that this omission rendered the search warrant invalid. This court disagreed. Citing Leon, we noted that the omission of this information did not show any indication of police misconduct that would show any bad faith on the affiant’s part and that this omission did not render the affidavit so deficient that the officers who executed the warrant could not in good faith believe that it was valid.
In this case, the Relator acknowledges the Leon good faith doctrine, but he contends that it does not apply because a reading of the affidavit shows that it obviously failed to set forth probable cause for the issuance of the warrant and that the officers were entirely unreasonable in relying upon it. Contrary to the Relator’s contention, we find it more likely that Detective Matthews, when preparing the affidavit for the residence, mistakenly copied most of the affidavit that he prepared the day before for the warrant to search the Mustang; and he simply forgot to include the link from the Mustang to the residence. Indeed, as pointed out by the State, the missing information was included in Detective Matthews’ affidavit for Mr. Williams’ arrest, which he prepared and presented to the same magistrate on the *1204 same day that he prepared and presented the affidavit for the search warrant for the residence. The affidavit for the arrest warrant was presented to the magistrate and signed by him at 3:40 p.m. on June 17, 2010. The affidavit for the search warrant for the residence was presented to the same magistrate and signed by him at 4:10 p.m. on the same date. When the magistrate signed the search warrant for the residence, he was aware of the connection between the Mustang and the residence from the affidavit for the arrest warrant. 11gThe misconduct contemplated by Leon that would prevent the district court or this court from applying the good faith doctrine is not present here.
The Relator also contends that the information a magistrate can consider must be within the “four corners” of the affidavit. However, in State v. Barrilleaux, 620 So.2d 1317 (La.1993), cited by the State, the Louisiana Supreme Court held that a magistrate can consider not only the information contained in the affidavit, but also information orally supplied to the magistrate at the time that the affiant seeks the warrant. The Louisiana Supreme Court refused to apply the exclusionary rule to instances where the magistrate is orally apprised of information that is not included in the affidavit but which if it had been included would have provided probable cause for the issuance of the warrant. Such is the case here.
The only information missing in the affidavit for the search warrant for the residence is the link between the Mustang used in the shooting and the residence. This information was included in the affidavit for Mr. Williams’ arrest warrant that was presented to the same magistrate a few minutes earlier. Moreover, as the district court noted at the hearing on the motion to suppress, “[t]he Magistrate could have said, is this the address of Gerald and he [(Detective Matthews)] could have said, oh, yes, I forgot to put that in there.” The district court further noted that:
“[T]he search warrant for the house does not indicate that the house is, in fact, the address of Gerald; however, that’s the only person we’re talking about in this search warrant and the search warrant for the vehicle states that the vehicle is registered to the suspect, Gerald’s mother and it has been traced back to this particular address. And so I think that there was enough information for the Magistrate to sign that search warrant. I don’t believe that the Magistrate was purposefully misled in this instance, based on what I see and based on the evidence that I now know the Detective had at the time.”
| isThe district court still further noted that the Relator’s argument may have been stronger had it been two different magistrates, but it was the same magistrate.
In sum, we find that Detective Matthews’ failure to include information in the affidavit for the search warrant linking the residence to the Mustang used in the shooting was an apparent oversight. Nonetheless, the magistrate was aware of this link because it was contained in the affidavit for Williams’ arrest warrant, which the magistrate read and signed mere minutes before reading the affidavit for the search warrant for the residence. Detective Matthews and the other officers were not unreasonable in relying on the validity of the search warrant for the residence. Nor is there evidence of any police misconduct on Detective Matthews’ part. Given these circumstances coupled with the fact that the magistrate was in possession of the information linking the residence to the Mustang before he signed the search warrant for the residence, none of *1205 the exceptions to the good faith doctrine applies to this case. Thus, the district court did not err in denying the motion to suppress the evidence seized from the residence. Accordingly, the Relator’s writ application is denied.
WRIT DENIED

. An almost identically worded affidavit was submitted to search the residence, 4147 Bay-ouview Court.

. The Relator does not object in this writ to the district court’s denial of the motion to suppress the evidence seized from the Mustang, nor does he object to the admissibility of the tapes of his phone conversations from jail.

. Under the good faith doctrine enunciated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), evidence seized pursuant to a warrant need not be suppressed if the officers who executed it acted in good faith that the warrant was properly issued.