779 So.2d 113 (2001)
STATE of Louisiana
v.
Michael ADAMS.
No. 99-KA-2123.
Court of Appeal of Louisiana, Fourth Circuit.
January 24, 2001.
*115 Hon. Harry F. Connick, District Attorney, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sandra C. Jenkins, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge BYRNES, Judge KIRBY, Judge LOVE.
WILLIAM H. BYRNES, Judge.
On August 18, 1998, a twelve-member jury found the defendant, Michael Adams, guilty as charged with possession of a dangerous weapon while in possession of cocaine, a violation of La. R.S. 14:95(E). On January 13, 1999, the court sentenced him to six years at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served.

STATEMENT OF FACT
Officer John Palm, an expert in the analysis and identification of controlled dangerous substances, testified that white powder and vegetative material seized in conjunction with the defendant's arrest tested positive for cocaine and marijuana, respectively.
Sgt. Mark Mornay testified that he is the head of the narcotics unit for the First District and that his office received numerous complaints in August 1997, from neighbors concerning suspected drug trafficking at 145 North Telemachus Street. On September 18, 1997, officers executed search warrants for two addresses on South Dupre Street. In the course of those investigations, officers received information from a confidential and reliable informant about drug trafficking at 145 Telemachus Street. On September 19, 1997, Sgt. Mornay set up surveillance of the Telemachus Street address during which he witnessed *116 several occasions in which a person would arrive by car or in a cab, enter the apartment, stay for a few minutes and then leave. On at least three occasions that day, Sgt. Mornay witnessed the same white female enter the apartment for a few minutes and then leave in a cab. Based upon his observations, Sgt. Mornay and his officers obtained a search warrant which was executed on September 30, 1997. However, prior to executing the warrant, the officers stopped two individuals, who paid a visit to the Telemachus Street address, and found contraband in their possession. Fearing their investigation might be compromised by these individuals possibly alerting the Telemachus Street resident, the officers decided to approach the residence while other officers were obtaining the search warrant. The officers knocked on the door of the residence, and when the defendant answered the door, they informed him of the nature of their investigation, that they were presently seeking a search warrant for the premises, and advised him of his rights. With the warrant imminent, the defendant allowed the officers in and revealed the location of the contraband and the weapon. The officers located cocaine in a jacket pocket and on a lottery ticket, found marijuana on a counter top, and retrieved a handgun from a kitchen cabinet. Subsequently, the warrant was executed and the defendant arrested.
On September 30, 1997, Officer Patrick Evans and his partner, Randy Loumiet, conducted a surveillance of 145 Telemachus Street, Apartment Number 1. They witnessed several occasions where both males and females would enter the residence greeted by the defendant, stay less than five minutes, and then leave. On one occasion a white male and female drove to the residence. The female exited the vehicle and entered the residence greeted by the defendant. Five minutes later, the defendant accompanied the female to her car, and spoke to the male occupant briefly before the car drove off. After that encounter, believing that a drug transaction had transpired, the officers stopped the vehicle and arrested the occupants for possession of narcotics. Officer Evans relayed the information of the arrest to Sgt. Mornay. After transporting the arrested suspects to central lockup, Officer Evans returned to 145 Telemachus while Officer Loumiet worked on the search warrant. At this point, Officer Evans' testimony corroborated Sgt. Mornay's testimony regarding the defendant's actions upon being advised of the investigation. Officer Evans advised the defendant of his rights and transported him to central lockup.
Officer Randy Loumiet testified that he participated in the investigation of complaints of drug trafficking at 145 Telemachus Street. He and Officer Evans conducted surveillance of the residence and based upon his observations and corroborating information from reliable sources, he obtained the search warrant for the residence. When he delivered the warrant to the address, he marshaled the evidence, documented it in his report and catalogued it for the evidence room.
Michael Adams testified that he did not live at 145 Telemachus Street. He happened to be at the residence the day of his arrest feeding his friend's cat. When he answered a knock on the door on September 30, 1997, he opened the door to five or six officers with their guns drawn. The officers entered the apartment uninvited. The officers demanded to know where he kept the dope. He told them he did not know what they were talking about. They threatened to arrest his girlfriend if he did not produce the dope. The officers made him go outside while they waited for the search warrant. He denied ever seeing the gun the officers retrieved from the apartment and said he did not show the officers where it was located.

ERRORS PATENT
A review of the record reveals an error patent with regard to defendant's sentence. The trial court failed to impose a fine as mandated by La. R.S. 14:95(E). *117 The sentence is, therefore, illegally lenient; but, because this is an error favorable to the defendant and the State has not complained, the illegally lenient sentence cannot be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986); State v. Samuels, 94-1408 (La.App. 4 Cir. 6/7/95), 657 So.2d 562. There are no other errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment, the defendant complains that the trial court erred in denying his motion to suppress the evidence. He maintains that the affidavit filed with the application for the search warrant did not set forth sufficient facts to establish probable cause for issuance of the warrant because the affiant made material and intentional misrepresentations to the magistrate.
A trial judge's decision to deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by a preponderance of the evidence. State v. Lee, 545 So.2d 1163 (La.App. 4 Cir.1989). In reviewing a denial of a motion to suppress, an appellate court is not limited to the evidence adduced at a suppression hearing, but may consider all pertinent evidence adduced at trial. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272; State v. Barra, 572 So.2d 1187 (La.App. 4 Cir.1990), writ denied, 575 So.2d 822 (La.1991).
This Court set out the applicable law pertaining to the issuance of search warrants in State v. Martin, 97-2904 (La.App. 4 Cir. 2/24/99), 730 So.2d 1029, writ den. 99-0874 (La.10/1/99), 747 So.2d 1136, as follows:
"La.C.Cr.P. article 162 provides that a search warrant may be issued `only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant.' The Louisiana Supreme Court has held that probable cause exists when the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Duncan, 420 So.2d 1105 (La.1982). The facts which form the basis for probable cause to issue a search warrant must be contained `within the four corners' of the affidavit. Id. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480 (La.1984), cert. denied Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The determination of probable cause involves probabilities of human behavior as understood by persons trained in law enforcement. State v. Hernandez, 513 So.2d 312 (La.App. 4 Cir.1987), writ denied, 516 So.2d 130 (La.1987)."
"In its review of a magistrate's finding of probable cause, the reviewing court must determine whether the `totality of circumstances' set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclu[ding] that probable cause existed.' Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)."
97-2904 at pp. 4-5, 730 So.2d at 1031-32.
Making a material and intentional misrepresentation to a magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. State v. Byrd, 568 So.2d 554 (La.1990); State v. *118 Brown, 93-2089 (La.App. 4 Cir. 12/15/94), 647 So.2d 1250, writ den. 95-0497 (La.12/6/96), 684 So.2d 921. "Intentional" means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526 (La.1978); State v. Ceasar, 97-1506 (La.App. 4 Cir. 9/24/97), 700 So.2d 242. However, if the misrepresentations or omissions are inadvertent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented. State v. Lingle, 436 So.2d 456 (La.1983).
In this case, Officer Randy Loumiet set forth the following circumstances in the affidavit filed with the application for search warrant:
As early as August, 1997, members of the New Orleans Police First District began to receive information from concerned citizens, in regards to excessive traffic, both pedestrian and vehicular, to apartment # 1, at 145 North Telemachus Street. The inordinate amount of traffic and unsavory appearance of the visitors, suggested to the complainants that narcotics was being peddled out of apartment # 1, at 145 North Telemachus Street. These complaints described a Black male, about 5'10", about 180 lbs., in his early forties, as the resident along with a female companion. The complaints further indicated that the traffic to the apartment was varied in race and sex, but that many of the female visitors had the appearance of prostitutes.
On Thursday, September 18, 1997, members of the First Police District performed service of search warrants at 503 and 507 South Dupre Street. During the investigation and attendant seizure of contraband crack cocaine, the officers learned from a confidential and credible source that a Black male, known as "MICHAEL", resided at 145 North Telemachus Street, apartment # 1, and was integrally involved in the retail sales of heroin and crack cocaine from that location along with his girlfriend. MICHAEL was said to obtain his heroin from the same sources as those arrested for sales of contraband narcotics at the Dupre Street locations.
Following the warrant service on Dupre Street, Sergeant Mark Mornay had the opportunity to establish a surveillance of apartment # 1 at 145 North Telemachus Street. During this effort, Sergeant Mornay observed several instances of visitors to the apartment. In each instance, a white female, in their early to mid-twenties, visited the apartment and stayed for only a few minutes, then leaving. The dress and appearance of visitors suggested to the officers that they were prostitutes. Prostitutes are often active narcotics users, supporting their addiction with the proceeds of illicit prostitution.
During the next two weeks, the First Police District continued to receive citizen complaints of constant traffic to apartment # 1. These citizens, in some instances willing to identify themselves to the officers receiving the complaint, again described the Black male occupant as conducting sales to narcotics, a conclusion based upon continuous but brief traffic to the apartment.
In response to these complaints and the information thus far obtained, on Tuesday, September 30, 1997, Officer Randy Loumiet and Patrick Evans established a covert surveillance of 145 North Telemachus Street, apartment #1.
The officers observed an older model gray two door Toyota Supra pull in front of 145 North Telemachus Street and stop. A White female exited the vehicle and knocked on the front door of apartment # 1 at 145 North Telemachus Street. A Black male answered the door and greeted the female, *119 after which they both entered apartment # 1. Approximately five minutes later, the female departed the apartment, entered her vehicle and pulled away from 145 North Telemachus Street traveling toward Canal Street turning lake bound and then unknown.
Approximately twenty minutes later, the officers observed a brown two-door vehicle occupied by a White female driver and a White male passenger. The vehicle pulled into the driveway of 145 North Telemachus Street and the female driver exited the car. The female knocked on the front door of apartment # 1 and, once again, was greeted by the same Black male. The two then entered the apartment and the door was closed. About five minutes after, the female exited apartment # 1 accompanied the Black male who answered the door. The two walked to the brown vehicle in which the female had arrived and the Black male and the front passenger greeted each other. At that point, the female entered the vehicle and both departed from 145 North Telemachus Street traveling up North Telemachus Street turning river bound on Canal Street.
The vehicle was subsequently stopped and the driver and passenger arrested for possession of a crack pipe. The female was discovered to be a known prostitute and drug addict, her male companion was placed into the rear of a marked police [vehicle] which had been checked and determined to be free of anything in the rear prisoner compartment. After removing the male arrestee and checking the rear prisoner compartment, the officers recovered 1.2 grams of crack cocaine from under the removable seat.
Based upon the information obtained from concerned citizens in the neighborhood, information from a confidential and credible source, the independent observations and corroboration of that information, and the subsequent arrest and recovery of contraband from visitors to the apartment, the deponent officer is evinced of the belief that controlled Dangerous Substances, more particularly cocaine is being secreted within and distributed from 145 North Telemachus Street, apartment # 1, and respectfully requested that an Order of Search be made issue.
One instance of intentional misrepresentation, the defendant claims, appears in the second paragraph of the affidavit. Specifically, the defendant argues that the credibility of the confidential informant was never established at trial or during pre-trial hearings.
While under cross-examination at trial Sgt. Mornay testified that officers, other than himself, worked with the confidential informant on other occasions. However, he also indicated that in this case he tested the informant's reliability and was satisfied with his findings:
Q. [Sgt. Michael Glasser] has worked with this person before?
A. ... yes, sir.
Q. And believes this person is reliable?
A. Yes. I found the person to be very reliable. I dealt with the person, um, and, ah, for a few hours, and I found the person to be very reliable.
* * *
Q. Did he [Sgt. Glasser] tell you that she was reliable?
A. I didn't ask.
Q. How in the world do you know?
A. ... I tested the individual. I dealt with the individual for hours. We're talking about a user
Q. Tested her?
A. ... yes, a user, a user of narcotics. This is an individual that uses narcotics. *120 This is an individual that buys ... from several locations.
* * *
Q. ... You [informant] don't get a reputation of being reliable unless you've done something, right?
A. ... That's one fashion.
Q. What's the other ...?
A. ... Information I received from that individual [informant] on that night regarding this individual [defendant] and others coincided with information I received in the past and corroborated later regarding vehicles
Q. So it coincided; it dovetailed. Okay.
A. Okay.
The foregoing excerpt of Sgt. Mornay's testimony show that he tested the reliability of the information provided by the confidential informant.
The next alleged instance of misrepresentation concerns information contained in paragraph three of the affidavit. The defendant takes exception to the use of the word "several" to quantify the number of visitors to the apartment. He protests that "three to four white females visiting an apartment over an unspecified period of time does not equate to `several instances' of visitors to the apartment."
Sgt. Mornay's trial testimony indicates that he saw three to four females make a total of six visits to the defendant's apartment:
Q. How many would you observe on any given day?
A. On that one particular day, [September 19, 1997], in that day, ... I saw this one female go there three times. I believe I saw two taxicabs pull-up.... On one occasion there were two females in the back. One exited the rear seat, went inside for a short span of time, came out. Total trips, maybe six, six. Individuals, maybe three to four ... (emphasis supplied).
Black's Law Dictionary 1232 (5th ed. 1979) defines "several" as "more than two, often used to designate a number greater than one." In light of Sgt. Mornay's testimony, "three to four" would constitute "several".
In State v. Martin, 97-2904 (La. App. 4 Cir. 2/24/99), 730 So.2d 1029, writ denied 99-0874 (La.10/1/99) 747 So.2d 1136, in a factually similar case, this court examined the evidence in support of a warrant:
[T]he tipster gave specifics about the drug activity. The caller provided a specific address and apartment number. The caller had seen a lot of activity both at day and night. The tipster described the person involved in drug activity as a black male, being the age of about fifty, who was known as "Plat." Officer Lainez's observations corroborated the caller's allegations. The person answering the door fit the description of a black male who was about the age of fifty. The officer saw several people entering and leaving the apartment in a suspicious manner after brief stays. He saw a female reaching for money. The officer stated that the subjects did not appear to be social visitors or "to be in an official capacity such as LP&L or a service person or something who had an official reason to be there ..."
Martin, 730 So.2d at 1033.
Like Martin, the informant in the instant case gave specifics about the drug activity, provided a specific address and apartment number, and gave a concise description of the suspect. The officers verified the suspected criminal activity through surveillance and noted that the defendant fit the description of the suspect supplied by the informant. Considering the totality of the circumstances set forth in the affidavit and the testimony, the trial court did not err in denying the motion to suppress the evidence. The trial court had a substantial basis for concluding that *121 probable cause existed. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In this assignment, the defendant argues that the vehicular stop, mentioned in paragraph seven of the affidavit in support of the search warrant, was illegal and therefore the information should not have been considered in the application for the search warrant.
The defendant has no standing to challenge the stop. He was not charged with possession of the narcotics seized incident to the vehicular stop. Additionally, since the officers were conducting surveillance of the defendant for suspected narcotics trafficking, when the "visitors" left the defendant, the officers had reasonable suspicion to believe the defendant had completed a drug transaction. Based on their observations, the officers had reasonable suspicion to stop the vehicle. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
By this assignment, the defendant contends the trial court erred in denying his motion to suppress the statement. He argues that the officers failed to inform him of his rights prior to entering his apartment.
At the motion to suppress hearing on July 6, 1998, Officer Patrick Evans testified that he was present when the defendant's rights were read to him; however, he did not advise the defendant, and could not recall who did. At the continuation of the suppression hearing on July 31, 1998, Sgt. Michael Glasser testified that he too was present when the defendant was advised of his rights; however, like Officer Evans, Sgt. Glasser did not read the defendant his rights. Sgt. Mark Marnay testified at trial that he was present when the officers knocked on the defendant's door and that he personally advised the defendant of his rights. Considering the consistency of the officers' testimony, it does not appear the court erred in denying the motion to suppress the statement. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 4
In a final assignment, the defendant argues that the trial court erred in denying his motion for mistrial when Officer Louimet made comments about the method of cooking crack cocaine.
A mistrial is warranted under La.C.Cr.P. art. 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant's rights that even a jury admonition cannot provide a cure. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Potentially damaging remarks include direct or indirect references to another crime committed or alleged to have been committed by the defendant, unless that evidence is otherwise admissible. La.C.Cr.P. art. 770(2). The comment must be within earshot of the jury and must be made by a judge, district attorney, or other court official. Id. A police officer is not considered a court official under Article 770; and, absent a showing of a pattern of unresponsive answers or improper intent by the prosecutor, a mistrial is not warranted. State v. Nicholson, 96-2110 (La.App. 4 Cir. 11/26/97), 703 So.2d 173, writ denied 980014 (La.5/1/98), ___ So.2d ___, 1998 WL 234690.
That portion of the officer's testimony to which the defendant objects came in response to the State's request that he identify evidence seized from 145 North Telemachus Street:
Q. I'm going to show you State's Exhibit 4 and ask if you recognize these items.
A. This was a glass test tube that was discovered in the house after the search warrant was signed. It's commonly used to cook crack cocaine in.
The State did not elicit the officer's editorial remark concerning the use of the glass test tube. The officer simply volunteered the information. Nevertheless, inasmuch *122 as the officer is not a "court official" for purposes of La.C.Cr.P. art. 770, his unsolicited comment was not grounds for a mandatory mistrial. This assignment is without merit.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.