J^LEON A. CANNIZZARO, JR., Judge.
On the application of the State of Louisiana, we grant this writ to review a judgment of the trial court granting the defendant, Peter Rando, Ill’s, motion to suppress the evidence seized against him.
FACTUAL AND PROCEDURAL HISTORY
On March 25, 2002, the defendant was charged by bill of information with one count of gambling, a violation of La. R.S. 14:90[1]. He pled not guilty. Following a hearing on the motion to suppress the evidence, the trial court took the matter under advisement. On October 9, 2002, the trial court rendered a judgment suppressing the evidence, but gave no oral or written reasons for his judgment.
The evidence in this case was seized pursuant to a search warrant. The affidavit for the warrant states that on July 27, 2001, an officer with the Louisiana State Police (“LSP”) Gaming Division received a call from a director for Park Place Entertainment, a corporation that operates Bally’s Casino in New Orleans. The director indicated that he had received a tip from an anonymous employee, concerning a bookmaking operation being conducted by Peter Rando, III, a pit manager at the casino. The employee indicated Rando was using both his home in St. Bernard Parish and the casino to take bets and make pay outs on an illegal football card operation. The LSP officer forwarded this information to the New Orleans Police Department’s gaming unit.
|3On November 9, 2001, the above information was forwarded to LSP Trooper Barry Ward. Trooper Ward verified that the defendant resided at 3801 Corinne Drive in Chalmette and was employed by Bally’s Casino in New Orleans as a pit manager. He drove past the indicated address, confirmed it existed, and took a picture of the house. He ascertained from the license plate of a car parked in the driveway that it was registered to Rando at that address. Trooper Ward further learned that garbage collection for that area occurred on Tuesday and Friday.
At approximately 5:00 a.m. on Tuesday, December 4, 2001, Trooper Ward and his supervisor, Sgt. Walgamotte, went to the defendant’s house and retrieved eight trash bags from a St. Bernard Parish trash container that had been placed on the sidewalk a few inches from the street. The officers took the bags to the state police office and searched them. Inside the bags the officers found several personal and business envelopes and newspapers containing the names Peter and Anne Ran-do and the address 3801 Corinne Drive. Two bags contained shredded documents with black and red ink. The officers were able to discern that these shredded documents had identifiable black lines and the words “ins” and “outs.” The writing on *21 the documents consisted primarily of numbers. In two other bags the officers found non-shredded or whole documents and at least one ripped document which resembled those that had been shredded. On the whole documents were lists of numbers in red and black ink with the words “ins” and “outs” printed in the upper right corner. The affidavit indicated the pages were covered with columns of numbers that had been put into sections labeled “reg” (for Rregular bets) and “tea” (for teaser bets)[2]. The affidavit described the sheets as having three columns. The left column recorded the amount of money bet on a particular team, the middle set forth the odds on the teams, and the right contained numbers, some of which had been circled to indicate a winning bet. The documents also contained the names of various people, which the affiant theorized could have belonged to people acting as “runners or satellite bookies” for the principal bookmaker. The affidavit further provided that the documents also contained the words “teasers” and “owes me” written on them. The officers found these documents wrapped in the sports section of the Times-Picayune Newspaper dated November 29, 2001.
The officers additionally found envelopes from local businesses, including hotels and banks, as well as other forms containing various names and numbers on them. The affiant stated the envelopes were consistent with those used as payment envelopes in bookmakmg operations, and that the forms containing the names and numbers possibly indicated the number of bets taken by “runners.”
On Tuesday, December 18, 2001, the officers again returned to the defendant’s house at approximately 3:80 a.m. and retrieved four garbage bags from his garbage can, which was placed at the curb. The officers found personal and business envelopes with the names of Peter and Anne Rando, as well as a card with the following markings: a) numbers 1 through 32; b) the word “name”; c) the abbreviation “amt”; d) the word “team”; and e) the number “06094” printed in red ink. The card had perforation lines at the top, consistent with the bottom portion of á football card used in a bookmaking operation.
1 .¿Based upon this affidavit, Trooper Ward obtained a search warrant for 3801 Corinne Drive. The officers executed the warrant on January 6, 2002, and pursuant to the warrant seized various documents, including stacks of football cards, many of which had money attached to them, a sports tally sheet, various personal checks, an address book, various football spread sheets, bank deposit slips, various sports line sheets, various game result sheets, three Super Bowl sheets, a blank ins/outs wager form, a stats record book, a monthly planner book of wagers for 2001, and $632.00 in cash. Also, after the search warrant was issued, the officers obtained the defendant’s telephone records that indicated many calls, of a short duration, were made and received at times that corresponded to the times of football games. During the execution of the warrant, the defendant’s home phone rang several times, but when an officer answered the callers hung up.
APPLICABLE LAW
A judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the *22 court which “[m]ay constitute evidence tending to prove the commission of an offense.” La.C.Cr. P. art. 161(A)(3). A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts that establish the cause for the issuance of the warrant. La. C.Cr.P. art. 162. As provided in the Louisiana Constitution and the Code of Criminal Procedure a search warrant shall particularly describe the person or place to be searched, the person or things to be seized, and the lawful purpose or reason for the search. La. Const, art. I, § 5; La.C.Cr. Pr. art. 162.
bin State v. Green, 2002-1022, pp. 7-9 (La.12/4/02), 831 So.2d 962, 968-970, the Louisiana Supreme Court, in considering whether an affidavit established the requisite probable cause for the issuance of a search warrant, stated:
Probable cause sufficient to issue a search warrant “exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” State v. Johnson, 408 So.2d 1280 (La.1982). A magistrate must be given enough information to make an independent judgment that probable cause exists to issue a warrant. See, e.g., State v. Manso, 449 So.2d 480, 482 (La.1984), cert. denied sub nom., Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The United States Supreme Court held that “[sjufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.” United States v. Leon, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citations omitted). Moreover, this Court previously held: “[t]he process [of determining probable cause] simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system.” State v. Rodrigue, 437 So.2d 830, 833 (La.1983) (citing Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)).
An issuing magistrate must make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). This affidavit must contain, within its four corners, the facts establishing the existence of probable cause for the warrant. State v. Duncan, 420 So.2d 1105 (La.1982); State v. Wells, 253 La. 925, 221 So.2d 50 (1969). In Wells, the source of the “four corners” doctrine” [sic] in this state, this Court noted that Article 162 required that the facts establishing probable cause be recited in the affidavit because the judge, not the affi-ant, is the one who must be satisfied as to the existence of probable cause. LA. CODE EVID. ANN. Art. 703(D) | .states that when evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a trial on his motion to suppress that evidence. The task of a reviewing court is simply to insure that under the totality of the circumstances the issuing magistrate has a “substantial basis” for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Accordingly, in Ro-drigue, we stated, “The magistrate’s de *23 termination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate’s assessment to be reasonable.” Rodrigue, 437 So.2d at 833. Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. State v. Jenkins, 2001-0023 (La.6/22/01), 790 So.2d 626 (citing United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)); State v. Loera, 530 So.2d 1271, 1278 (La.App. 2 Cir.1988), writ denied, 536 So.2d 1252 (La.1989).
[[Image here]]
The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Simms, 571 So.2d at 148. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Rodrigue, 437 So.2d at 830. The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Simms, 571 So.2d at 149; State v. Ogden and Geraghty, 391 So.2d 434 (La.1980).
IsDISCUSSION
The affidavit in this case set forth sufficient evidence to support the finding that, more likely than not, evidence of gambling would be found in the defendant’s house. The police received a tip that the defendant was conducting a bookmaking business involving illegal football cards from his Chalmette home and at his place of employment, Bally’s Casino. Bally’s personnel received the tip from the defendant’s co-employee and informed the LSP. The police then set out to verify the information. They determined that the defendant did five in Chalmette. On two occasions, troopers seized garbage bags from cans that had been placed at the curb in front of the defendant’s residence[3]. The bags contained documents linking the garbage to the defendant and his wife, as well as documents that indicated someone was conducting an illegal football gambling business. Clearly, considering the totality of the circumstances and a common sense reading of the affidavit, the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the search warrant, and his assessment of the supporting affidavit was reasonable;
In opposition to the State’s writ application, the defendant argues that the affidavit supporting the issuance of the search warrant was deficient in several respects. Specifically, he alleges that the affidavit *24 contained intentional misrepresentations and omissions, which invalidate it. In State v. Adams, 99-2123, pp. 5-6 (La.App. 4 Cir. 1/24/01), 779 So.2d 113, 117-118, this Court discussed the validity of an affidavit which contained intentional misrepresentations or omissions:
|9Making a material and intentional misrepresentation to a magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. State v. Byrd, 568 So.2d 554 (La.1990); State v. Brown, 93-2089 (La.App. 4 Cir. 12/16/94), 647 So.2d 1250, writ den. 95-0497 (La.12/6/96), 684 So.2d 921. “Intentional” means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526 (La.1978); State v. Ceasar, 97-1506 (La.App. 4 Cir. 9/24/97), 700 So.2d 242. However, if the misrepresentations or omissions are inadvertent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented. State v. Lingle, 436 So.2d 456 (La.1983).
See also State v. Rey, 351 So.2d 489, 491— 492 (La.1977).
As to the misrepresentations and omissions, the defendant first argues that the affiant should have known the tip received in July from the Bally’s employee concerning the illegal football card operation was untrue because no football games take place in July. However, the prosecutor noted at the suppression hearing that football leagues other than the NFL play games during the month of July.[4]
The defendant also argues that the affidavit failed to disclose that the surveillance at the casino in the months leading to the request for the warrant did not show any illegal activity by the defendant. He notes that the affiant did not receive notice of the tip from the Bally’s employee until three months after the tip was given to the LSP, and the affidavit was not sought until five months after the tip was received. These arguments have no merit. The issuance of the warrant was not based solely on the tip. The affidavit also contained evidence of gambling seized from the defendant’s garbage, which supported the issuance of the warrant.
ImThe defendant next attacks the evidence seized from the garbage. He argues that the evidence was insufficient to support the affiant’s conclusion that the documents seized were related to a gambling operation. At the motion hearing, Trooper Ward testified that he and Sgt. Walgamotte went through the garbage with Sgt. Tumulte, who was an experienced gambling investigator. The affidavit described in detail the documents seized from the bags, and given their nature and Sgt. Tumulte’s expertise, Trooper Ward’s conclusions that the documents were related to an illegal gambling operation were not unreasonable or false.
The defendant also attacks Sgt. Tu-multe’s opinion due to his inability to remember exactly what documents were seized from the garbage. The documents were seized at least seven months prior to the hearing at which Sgt. Tumulte testified, and he could not recall what specific documents were found in the garbage. Contrary to the defendant’s argument, the fact that Sgt. Tumulte did not remember in July 2002, the date of the motion hearing, what was seized in December 2001 does not mean that he did not recognize in December 2001 that what was recovered was related to a gambling enterprise. Nor does the fact that he did not remember in *25 July what was seized the previous December mean, as theorized by the defendant, that Sgt. Tumulte gave no opinion in December as to the nature of the documents seized. This argument is without merit.
Next, the defendant argues that the sole piece of a football card seized from the garbage was not the portion kept by the bookmaker, and thus it was not evidence of a bookmaking operation. Paragraph 5 of the affidavit indicates the bottom portion of a football teaser card was found in the garbage. At the suppression hearing defense counsel prefaced a question to Trooper Ward with the statement that the bettor keeps the top portion of the card and the bookmaker keeps Inthe bottom portion. In response, Trooper Ward acknowledged that Sgt. Tumulte had told him that the bookmaker keeps the bottom portion. Thus, the defendant’s claim that the bottom portion of the football card was not evidence of a bookmaking operation is without merit.
The defendant also argues that the gambling documents found in the garbage could not be linked to him because none had his name on it. Although the gambling documents did not contain his name, they were found in his garbage along with other documents bearing his and his wife’s names. Thus, it was reasonable for the officers to conclude that the documents came out of his house, since they were retrieved from the garbage can in the front of his house. Clearly, the contents of the garbage were sufficient to link the defendant to the gambling operation. Also, for purposes of establishing probable cause for the issuance of the search warrant, the officers did not have to prove that the defendant was guilty of the gambling offense, but rather only a reasonable probability that evidence of an illegal gambling operation could be found in the house.
Finally, the defendant points to the gap in time between the garbage searches, both in December, and the execution of the warrant in early January to argue that the information in the affidavit was stale. He notes that the last documents were thrown out on December 18, 2001, eighteen days prior to the date the warrant was issued and that during this time no intervening evidence was presented to indicate gambling paraphernalia would be found in his home in January 2002.
A warrant may become stale if facts and circumstances at the time of its execution show that probable cause no longer exists. State v. Casey, 99-0023, pp. 4-5 (La.1/26/00), 775 So.2d 1022, 1028. Thus, staleness is an issue only when|1gthe passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed. Id. In the instant case, the fact that the officers found gambling documents in the garbage two different times in December 2001 showed the operation was an ongoing one. Also, the NFL season had not yet ended in January 2002 when the warrant was executed. Thus, under these circumstances, the passage of time between when the officers searched the defendant’s garbage and found evidence of a gambling operation and the execution of the search warrant was not so lengthy as to render the information contained in the warrant stale.
CONCLUSION
In view of the circumstances of this case, the State has demonstrated that probable cause existed to support the issuance of the search warrant and that the warrant was valid. Thus, the trial court erred in suppressing the evidence seized pursuant to the warrant.
Accordingly, for the above reasons, the trial court judgment granting the defendant’s motion to suppress is reversed and *26 the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
JjPER CURIAM.
The defendant’s application for rehearing is denied.
As stated in the April 9, 2003 opinion of this Court, the defendant was charged on March 25, 2002 with one count of gambling. The trial court held a hearing on the defendant’s motion to suppress the evidence on July 30, 2002 and took the matter under advisement. On October 9, 2002, the trial court granted the defendant’s motion to suppress, but gave no oral or written reasons for his judgment. The State requested that the trial court issue written reasons for judgment, but he failed to do so. The State timely filed its writ application, seeking this Court’s review of the trial court’s October 9, 2002 ruling. The defendant filed a response to the State’s writ application on January 21, 2003. However, nothing in the record indicated that the defendant had requested that the trial court give written reasons for his October 9, 2002 judgment.
The State supplemented its writ application with the transcript from the motion to suppress hearing. Based on our review of the witnesses’ testimony, the search warrant application, and the affidavits in support thereof, in the absence of the trial court’s reasons for judgment, this Court determined the trial court erred in granting the motion to quash. It was not until after this Court rendered its decision on April 9, 2003, reversing the trial court’s judgment in favor of the defendant, did | ¡.the defendant ask the trial court to issue written reasons for his judgment rendered six months earlier.
The record indicates that ample time existed for the defendant to have requested written reasons from the trial court for the October 9,. 2002 judgment and/or for the trial court to have provided them to this Court prior to the issuance of our April 9, 2003 opinion. Thus, we decline to consider, after the fact, the written reasons for judgment rendered and submitted by Judge Cresap to this Court on May 6, 2003, in support of the defendant’s application for rehearing.

, La. R.S. 14:90 A(l)(a) defines Gambling as:
the intentional conducting or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

. A "teaser bet” would involve a more generous point spread for the bettor than would a "regular bet,” however, the pay off or winnings would be less for a successful teaser bet than for a regular bet.

. In California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court held persons have no reasonable expectation of privacy in garbage that is placed on the curb for collection as it is "readily accessible” to anyone or anything passing by it. Thus, the seizure of the garbage in this case was legal.

. It is also noted that the NFL preseason games begin in the month of July.