MAX N. TOBIAS, JR., Judge.
hOn 31 March 2009, the defendant, Michael Williams (“Williams”) was charged in count one of a bill of information with possession with intent to distribute heroin and in count two with being a felon in possession of a firearm. He pled not guilty at arraignment.
Williams filed motions to suppress the evidence and statement. Hearings on the motions were conducted on 16 July 2009 and 13 January 2010. The trial court granted the motion to suppress the evidence as it concerned the firearm and denied the motion with respect to all other evidence. Likewise, the court found no probable cause as to the charge of a felon with a firearm count, but found probable cause with respect to the remaining charge of possession with intent to distribute heroin. On the state’s application, this Court reversed the trial court’s ruling with respect to count two. State v. Williams, 10-0223, unpub. (La.App. 4 Cir. 3/2/10).
On 15 March 2010, Williams pled guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the trial court’s ruling on the motion to suppress the evidence. On the charge of possession with intent to distribute heroin, the trial court sentenced him to fifteen years in the custody of the department of corrections and fined him $1,539.00. On the charge of being a 12felon in possession of a firearm the court sentenced Williams to ten years at hard labor and fined him $1,000. The sentences were ordered to be run concurrently.
Testimony at the hearings reflects that Detective Harry Stovall received information from a confidential informant (“Cl”) that narcotics were being sold by an individual known as “Ike” from a house located at 123 South Clark Street in New Orleans. On 27 January 2009, with the assistance of the Cl, Detective Stovall conducted a controlled buy from the location. On 30 January 2009, Detective Sto-vall obtained a search warrant for the Clark Street address.
On 3 February 2010, Detective Stovall along with several other officers proceeded to the Clark Street address where they began surveillance of the dwelling in order to determine if the subject identified as “Ike” was at the location. Shortly after commencing their surveillance, Detective Stovall observed the defendant exit the residence, enter a parked vehicle, and drive off. The detective informed the assisting officers of his observation, and they were able to stop the defendant without incident nearby. Williams was informed of the nature of the investigation, and Miranda warnings were issued.
After entering the residence, Detective Stovall observed a female, later learned to be Williams’ girlfriend and two small children.
During the search of the residence, three small packages of heroin were recovered from inside a DVD player located in what Detective Stovall believed to be Williams’ bedroom. A gun was recovered *672 by Detective John O’Brien from another bedroom on the top shelf of a closet. In all, $2,539.00 was recovered from the residence.
After making these seizures, Detective Stovall advised Williams of his Miranda rights a second time. At that time Williams made a statement to the ^effect that the narcotics and the drugs were his and not his girlfriend’s. He subsequently recorded his own remarks on the Miranda form which he signed.

ERRORS PATENT

A review of the record for errors patent reflects that the trial court failed to require that Williams’ sentence on count two be served without the benefit of parole, probation or suspension of sentence mandated by La. R.S. 14:95.1. However, La. R.S. 15:301.1 A provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Hence, we need take no action to correct the trial court’s failure to specify that the Williams’ sentence for possession with intent to distribute heroin be served without benefit of parole, probation, or suspension of sentence. The correction is statutorily effected. La. R.S. 15:301.1 A.

ASSIGNMENT OF ERROR NUMBER 1

Williams contends that the trial court erred in denying his motion to suppress the evidence on the ground of an intentional misrepresentation by the affiant or, alternatively, because the warrant affidavit was insufficient and could not form the basis for a finding of probable cause.[1]
A search warrant may only issue upon a showing of probable cause, which is established “when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” State v. Johnson, 408 So.2d |41280, 1283 (La.1982). See also, State v. Green, 02-1022 (La.12/4/02), 831 So.2d 962; State v. Rando, 03-0073 (La.App. 4 Cir. 4/9/03), 848 So.2d 19. The affidavit must give the magistrate sufficient information “to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system.” State v. Rodrigue, 437 So.2d 830, 833 (La.1983); see also, Green, supra; Rando, supra. The magistrate then must determine whether the affidavit sets forth sufficient information to conclude that a fair probability exists that evidence of a crime or contraband will be found in the place described in the warrant. The information supporting a finding of probable cause for the issuance of a search warrant must be contained within the “four corners” of the affidavit. Green, p. 8, 831 So.2d at 969
In Green, the court set forth the standard for appellate review of a magistrate’s determination of probable cause:
The task of a reviewing court is simply to insure that under the totality of the circumstances the issuing magistrate has a “substantial basis” for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, ... (1983). Accordingly, in Rodrigue, we stated, “The magistrate’s determination of probable cause, prior to *673 issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate’s assessment to be reasonable.” [State v.] Rodrigue, 4B7 So.2d at 833. Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. State v. Jenkins, 2001-0023 (La.6/22/01), 790 So.2d 626 (citing United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684, ... (1965)); State v. Loera, 530 So.2d 1271, 1278 (La.App. 2 Cir. 1988),....
Green, 02-1022 at p. 8, 831 So.2d at 969; see also, Rando, supra. The defendant bears the burden of proof to show that evidence seized pursuant to a search warrant should be suppressed. State v. Williams, 03-0302, p. 5 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, 754; Green, supra; Rando, supra.
In State v. Adams, 99-2123, pp. 5-6 (La.App. 4 Cir. 1/24/01), 779 So.2d 113, 117-118, this court discussed the validity of an affidavit which contains intentional misrepresentations or omissions:
Making a material and intentional misrepresentation to a magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. State v. Byrd, 568 So.2d 554 (La.1990); State v. Brown, 93-2089 (La.App. 4 Cir. 12/16/94), 647 So.2d 1250, unit den. 95-0497 (La.12/6/96), 684 So.2d 921. “Intentional” means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526 (La.1978); State v. Ceasar, 97-1506 (La. App. 4 Cir. 9/24/97), 700 So.2d 242. However, if the misrepresentations or omissions are inadvertent, the warrant will be retested for probable cause after supplying that which had been omitted or striking that which had been misrepresented. State v. Lingle, 436 So.2d 456 (La.1983).
See also, State v. Rey, 351 So.2d 489 (La. 1977); State v. Page, 95-2401 (La.App. 4 Cir. 8/21/96), 680 So.2d 700.
In the case at bar, the affidavit in support of the warrant contained, in full, the following statements of fact:
Within 72hrs. inclusive of January 27, 2009, NOPD Narcotics Detective Harry Stovall received information from a reliable and confidential informant who had provided information in the past, which led to the arrests and convictions of numerous individuals. On this occasion the Cl provided information relative to a black male, in his early to late thirties, about 5' 10" tall, ^weighing about 180 lbs, medium brown complexion, bald head, several medium to long dreads coming from the hair on his chin known by the name of IKE selling cocaine and heroin from residence located at 123 South Clark Street.
The informant expressed his/her willingness to conduct a controlled buy in order to corroborate the information Detective Stovall routinely searched the informant to assure he/she was not in possession of any contraband or currency. The informant was supplied with funds allotted from NOPD expense funds and released. Detective Stovall was able to conceal himself in the area in question affording himself [an] unobstructed view of [the] front door of 123 South Clark Street. Detective Stovall *674 observed as the informant approached [the] front door of 123 S. Clark Street and knocked. Seconds later, a black male subject matching the description of “Ike” answered the door and spoke with [the] informant. The informant spoke with the black male subject and handed him the supplied currency. The black male subject then re-entered [the] residence and allowed the Cl to wait near the corner of South Clark and Canal. Seconds later, the black male subject returned [to the] front door [and] exited it and met the Cl alon[g] the sidewalk in front of his residence and handed the informant a small object(s) [sic]. The informant then left [the] residence and relocated to a predetermined location to meet with Detective Stovall. Upon meeting with Detective Stovall, the inform[ant] handed to Detective Stovall two small plastic bags that contained a brown powder like substance and stated Ike was the person who s[old] he/she [sic] the heroin. After a closer view of the heroin like substance, Detective Sto-vall believed it to be consistent with that of heroin. Dete[ctive] Stovall who maintained custody and logged it into evidence at Central Evidence & Property under control number 200901380. At this time, based on Detective Stovall’s observations and information, which was corroborated by the controlled purchase, it is stro[ngly] believed by Detective Stovall that heroin is being stored and sold from 123 South Clark Street. Therefore it is respectfully requested tha[t an] order of search be signed and made issue with the court for 123 Clark Street.
Williams contends that numerous misrepresentations and or omissions contained within the warrant reflect a calculated effort to deceive the issuing 17magistrate or hide material facts such that the trial court should have found the warrant to be invalid.
Initially, Williams notes that Detective Stovall failed to inform the Magistrate that the Cl was in fact a paid informant. In State v. Blanchard, 99-599 (La.App. 5 Cir. 11/10/99), 749 So.2d 19, the defendant focused on the fact that the affidavit failed to relate that the informant had a prior record or that he was a paid informant. The court concluded that the omission did not appear to be intentional. Rather, the court concluded that it appeared that the investigating officers had “operated under the assumption that law enforcement officials, including judges, are generally aware that police frequently use informants who themselves might have criminal records or will aid police only in exchange for monetary compensation.” Id., p. 12, 749 So.2d at 27. We agree with the Fifth Circuit’s conclusion in this regard. We do not find that the omission was so intentionally misleading that it affected the magistrate’s decision.
The only other purported omission or misrepresentation identified by Williams relates to Detective Stovall’s failure to inform the magistrate that the powdery brown substance contained in two small plastic bags was not tested to confirm that the substance was in fact heroin. Although review of the affidavit reflects that Detective Stovall did not stipulate that the substance was not tested, nothing suggests that Detective Stovall intended to suggest that the substance was tested or that there was any basis, apart from the detective’s previous experience in conducting narcotics investigations, that the substance was heroin.
Other than these two examples, Williams does not point to any other material omissions or misrepresentations from the affidavit, and our review of |sthese two examples suggests that if anything they *675 were inadvertent and fall short of suggesting that a fraud was perpetrated on the court.
The remainder of the defendant’s concerns with the warrant is all properly examined within the context of the sufficiency of the warrant to establish probable cause to search the residence.
Chief among Williams’ complaints is that the warrant failed to establish that the information supplied was not stale. “Staleness” is an issue when the passage of time makes it doubtful that the contraband sought in the warrant will be at the place where it was observed. State v. Williams, 00-0011 (La.App. 4 Cir. 5/9/01), 788 So.2d 515.
In suggesting that the information in the warrant was stale, Williams draws upon the analysis of State v. Thompson, 354 So.2d 513 (La.1978), where the Court noted that the timeliness of the facts relied upon should be in the affidavit; the Court found that because all the observations in the warrant were couched in the past tense, the absence of any time frame for the information was fatal.
Although the information in the warrant pertaining to the informant’s knowledge of drug sales occurring at the suspect residence lacked a specific time frame, Detective Stovall corroborated the Cl’s information by conducting a controlled buy that was completed within 72 hours of the application being submitted.
On this issue of timeliness, in State v. Williams, supra, we determined that although 15 days had passed between the first time information was received regarding pertinent drug deals and the subsequent application for a search warrant, and that five days separated the last transaction and the warrant application, the warrant was not stale.
lain State v. Stewart, 92-2536, (La.App. 4 Cir. 12/15/94), 648 So.2d 15, police received information from a reliable Cl that a suspect was selling heroin from a particular address. Two days later, the officer arranged for the informant to purchase heroin in a controlled buy; however, the warrant was not served until eight days later. We held that the above information was sufficient to warrant a man of reasonable caution to believe that heroin would be found on the premises, eight days after the warrant was issued and ten days after the controlled buy.
Accordingly, although the timeliness of some of the information contained in the warrant cannot be determined, the warrant contained enough critical information that was timely.[2]
In suggesting that the Detective Sto-vall’s affidavit was insufficient, Williams also points to the lack of information suggesting that the Cl had been in the house in the past so as to confirm that there was a “stash” of heroin or cocaine contained therein. Williams notes that the Cl did not suggest that he was invited to return to make future purchases, which tends to demonstrate the unlikelihood of drugs being present in the future.
In support, Williams cites State v. Lewis, 385 So.2d 226 (La.1980), where no indication existed that the marijuana that was offered to the informant would be there when the warrant was executed. Lewis concerned the casual consumption of marijuana by the informant at an acquaintance’s apartment, and the warrant was *676 not served until approximately two weeks after the unidentified quantity of marijuana was observed. The case is distinguishable.
| inThe defendant also notes no information was supplied indicating ongoing drug activity as was the case in State v. Fairbanks, 467 So.2d 87 (La.App. 4 Cir.1985), where surveillance indicated an unusual amount of foot traffic indicative of drug transactions.
Although no observations of that nature were documented, the Supreme Court has ruled that the controlled buy of a small amount of illegal drugs at a residence by a Cl is enough to give the police probable cause to secure a warrant for that address. See State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396; State v. Grey, 408 So.2d 1239 (La.1982); State v. Klar, 400 So.2d 610 (La.1981).
Finally, Williams contends that the foregoing deficiencies, coupled with the fact that Detective Stovall failed to field test the powdery brown substance, were insufficient to establish probable cause.
In State v. Green, 02-1022 (La.12/4/02), 831 So.2d 962, it was suggested that the affidavit failed to sufficiently establish that a crime had been committed. In considering the issue, the Court reflected on the nature of probable cause as follows:
From the outset, we note the trial court hinged its judgment on the fact that the affidavit failed to even establish that a crime had occurred. Although certainty of knowledge of the commission of a particular crime is frequently an important factor in the determination of probable cause, probable cause may exist when the commission of a crime has not been definitely established, but is reasonably probable under the totality of the known circumstances. State v. Simms, 571 So.2d 145, 149 (La.1990). The police therefore need not specify exactly what crime has been committed as long as they have probable cause to believe that a crime has been committed. See WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 3.1(b), p. 7 (1996) (stating that two conclusions necessary to the issuance of the search warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being [n connected with criminal activity, and that the items will be found in the place to be searched).
The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 ... (1949); Simms, 571 So.2d at 148. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 ... (1975); Rodrigue, 437 So.2d at 830. The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. Simms, 571 So.2d at 149; State v. Ogden and Geraghty, 391 So.2d 434 (La.1980). Likewise, probable cause will not be defeated simply because innocent explanations for an activity can be imagined. LAFAVE, SEARCH AND SEIZURE, § 3.2(e), p. 69. Probable cause exists if a “succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a *677 criminal one.” Id. at 70 (quoting United States v. Patterson, 492 F.2d 995 (9th Cir.1974)).
Id., p. 10, 831 So.2d at 969-970.
Here, although the substance was not submitted for testing, the circumstances of the transaction, coupled with the officers conclusions drawn from over 20 years of experience, confirm that it was reasonable to conclude from the information provided that the substance was in fact most likely heroin. At the very least, it was reasonable to conclude that substance was a counterfeit controlled dangerous substance prohibited by La. 40:967 A(2). Accordingly, the failure to submit the powdery brown substance for testing was not fatal.
We find the assignment of error is without merit.

^CONCLUSION

We affirm Michael Williams’ convictions and sentences.
AFFIRMED.

. Although the trial court's ruling on the motion to suppress the evidence, as it affected count two of the bill of information, was previously the subject of review by this court, the constitutionality of the warrant itself was not at issue.

. We note that in Louisiana, the time for executing a search warrant is limited by La. C.Cr.P. art. 163, which provides that a "search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance.” The search warrant in this case was executed within three days of its issuance and therefore within the statutory time limit.